# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT _GreenVille_

John F. Reardon )
                )
_____ )
                )
_____ )
                )
Name of plaintiff (s) )
                )
v.              )        Case No. _____
                )        (to be assigned by Clerk)
Thomas Brown    )
                )
Edward Tesrer   )
                )
Steve McEwen    )
Name of defendant (s) )

## COMPLAINT

1. A short and plain statement of the grounds for filing this case in federal court (include federal statutes and/or U.S. Constitutional provisions, if you know them): _On 4/22/18,_

_K-9 Deputy Thomas Brown led a contingent of Johnson County deputies to my house, lied his and their way into my home, then immediately commandeered control of my residence, and proceeded (see over &/)_

2. Plaintiff, _John Francis Reardon_ resides at

_1825 Copley Branch Road_, _Butler_
street address                        city

_Johnson_, _TN_, _37640_, _(423) 768-1225_.
county      state   zip code   telephone number

(if more than one plaintiff, provide the same information for each plaintiff below)

_____  _____

_____  _____

1

Case 2:19-cv-00181-CRW    Document 1    Filed 10/22/19    Page 1 of 18    PageID #: 1

## Complaint (Cont.)

ULTRA VIRES, To invade my privacy and the expectation of privacy of Two gues. in my home and without seeking or obtaining my permission, proceeded without warrant or probable cause to conduct fish hunt Seizures and serches of the persons of my guests and a general Top to bottom Search of a bedroom in my ho.

The seizures and searches were conducted in defiance of the longestablished basic principle of AmericanLaw that searches and seizures carried out inside a dwelling place without a warrant are ipso facto unreasonable — in violation of the Fourth Amendment to The U.S. Constitution.

I am Instituting suit against Brown et al under The Civil Rights Act, Chapter 42 of The U.S. Code, Section 1983.

3. Defendant, *K-9 Deputy Thomas Brown* ~~lives at~~, or its business is located at

*Sheriffs Dept. 216 Honeysuckle St.* , *Mountain City* ,
street address                                                                          city

*Johnson* , *TN* , *37683* .
county                                          state                 zip code

(if more than one defendant, provide the same information for each defendant below)

*Sheriff Edward Tester  same as above*

*Public Defender Steve Mc Ewen, 1500 W. Elk Ave*
*Elizabethton, TN 37643*

4. Short and plain statement of your claim (state as briefly as possible the facts of your case and how each defendant is involved. You may use additional paper if necessary): *On April 22, 2019.*

*Johnson County Deputy Sheriff Thomas Brown, with several young deputies in tow, came to the back door of my single family house at 1925 Copley Branch Road in Butler. He suggested that he had an arrest warrant for a Justin Ott who he stated with certainty lived at my address. The proposition that Justin Ott was living in my house was absurd. That Ott had not stepped foot in my house in at eight years time. (See attachment No 1, pg 1. However cited A-1 and pg #) Brown offered no response. At no point did he provide his indica of reliability for his preposterous claim that Ott resided in my home, or why he would be at home on this day. Brown requested that he and his minions be allowed to do a quick, visual, look see through my house*

Case 2:19-cv-00181-CRW     Document 1     Filed 10/22/19     Page 3 of 18     PageID #: 3

to look for Justin Ott. Despite the suggestion that I was so old (78) and senile to know who was and who wasn't living in my own house, I authorized him and his minions to conduct a cursory, strictly visual inspection of places inside my home where a full grown male, specifically Justin Ott, might be hiding. Hereafter referred to as the Ott in the house authorization. Brown requested nothing more intrusive into the privacy of my home. And why would he? I had provided him with all the means necessary to realize his stated purpose.

However as I stepped out onto my back porch to provide the deputies ingress to my home, I noticed that Brown's deployment of his task was a curious one for some one supposedly seeking Justin Ott. His dispositions were all concentrated on the north side of my house, and upon entering my house he had delegated a deputy to remain in my north side carport, in position to observe both windows of my granddaughter Kristy's room, currently occupied by her friend Sandra Michelle Kent. No provisions were made to cover the south side of my house where one would suspect that Justin might be living in his old girlfriend's appartment. (see A-1 pp 1 and 2).

I had expected to escort Brown through my house, but once inside he left me in his wake as he bypassed several places where Justin could be hiding — see A-1, p.2 — and quick stepped directly to Kristy's bedroom door. I made my way through the deputies and knocked on her bedroom door, and gave her a heads up as to what was going on. Meanwhile Brown was in a state of high dudgeon because the bedroom door was locked. One can surmise that the only way he would know the door was locked was because he had tried to break in on her. Brown hollered over my sholder that he was a member of the Johnson County Sheriff's Department, and to open in the The name of The Law, or some such thing; and what was she hiding in there? I thought to myself its no business of your's what she may or may not be hiding in there, Deputy Brown, so long as it isn't
(over)

JUSTIN OTT. Besides, I had not indicated to Sandra any sense of urgency about opening the door. What was the need? With Brown and company outside the only door to the room and a deputy outside covering the only two windows, Ott wasn't going anywhere. And Sandra well could have valid reasons for not opening the door with alacrity (see A-1 p.2). And once he was admitted into the room all he was legally empowered to do was to scan the room and look into its only closet for Justin Ott. But as soon as Sandra opened the door, he siezed her. Unbeleivably with a bill of rights such as ours, without a warrant, without probable cause, no criminal behavior to associate her with, in point of fact for no ligimate reason whatsoever, Brown took it upon himself to unreasonably intrude upon Sandra's constitutionally protected reasonable expection of privacy as a quest in my home, siezed her, ordered her about, interrogated her and demanded that she furnish him with some form of identification. (See A-2, Lines 5+6).

So obviously, from conceptualization to implementation Brown's excursto my house was a police raid, and a police state one at that. And that the target of this police action was Sandra Michelle Kent. And that Brown had embarked for my house without a search or arrest warrant for her. And that Brown gave every impression that he had no foreknowledge of Sandra whatsoever. Obviously Then, Brown's Ott in the house contention was the rediculously obvious sham it had been from the outset, a cozinage on his part. To access the interior of my home. And astonishingly he had had no intention of complying with the delimiting provisions of the Ott in the house authorization from the get go. Even though a quick visual walk through my house for Justin Ott was the only thing he was legally empowered to do within the confines of my home.

By virtue of his unjustified, flagrantly unlawful seizure, serch, and interrogation of Sandra Kent, Deputy Brown had radically altered the scope and object of the Ott in the house authorization beyond recognition. Something he could not Lawfully do, "The scope of a search must be strictly tied to and justified by the circumstances which rendered its initiation permissable." ( TERRY v. Ohio, 392 U.S. 1 at 19 )1968. That is to say the Ott in the house visual walk through.

Liqitimately only I exercise dominion and control within the confines of my home. I alone control who enters my home, who doesn't, and I establish the behavioral expectations for those who expect to remain there-in. And that control applies to police officers desiring to enter my house without a warrant.

MANIFESTLY:

(a). I did not authorize any searches of my home other than the Jason Ott look see. (b). I did not authorize any seizures within the four walls of my home what-so-ever. I didn't have to, Brown claimed to have a valid arrest warrant for Jason Ott. (c). Each of Brown's seizures and searches inside my home was made sans a warrant. (d). Each one was conducted without any of the well recognized exceptions to the holding that, "It is a basic principle of Fourth Amendment Law that searches and seizures inside a home without a warrant are presumptively unreasonable." [unlawful]. (Payton v New York 445 U.S. at 601) (E). It necessarially must follow that all evidence seized as a result of Brown's unlawful seizures and searches was the fruit of the poisonous tree. And in this particular case the tree was the size of a giant redwood.

I want to make it abundantly clear that at no point did I ever voluntionally surrender my soverqnity or control over my home to Deputy Brown; or forfeit my constitutionally protected reasonable expectation of privacy and that of my quests within my home. Nor did I ever change the scope or focus or any provision of the Ott in the house authorization that established the behavioral expectations of the deputies

(OVER)

to ensure that their intrusion into my home was minimal. That behavior from a Fourth Amendment perspective, or any other perspective,[1] proved to be horrificly invasive.

The only contact Brown would legitimately be expected to have with Sandra Kent would be incidental to the few seconds it would take him to enter her bedroom, with her permission if she was inside, scan the room and its one closet for Justin Ott, and not finding him to leave the room and move on. The Fourth Amendment, "...protects people not places." (Katz v United States, 389 U.S. 347, 351) 1967. The object of the Fourth Amendment is the protection of privacy...." Warden v Hayden (citation on Page 4). And more particularly it protects people from unreasonable intrusions into their legitimate expectations of privacy." (United States v Chadwick (See A1 p2 for citation). And by privacy is ment the right to be "left alone." The makers of our constitution conferred, as against the government the right to be left alone.... To protect that right, every unjustifiable intrusion... upon the privacy of the individual... must be deemed a violation of the Fourth Amendment." (Olmstead v United States, See A-1 p. 2 for citation). As a guest in my house Sandra Kent had a constitutionally protected reasonable expectation of privacy. "The house guest is there with the permission of the host, who is willing to share his house and his expectation of privacy with his guest." And that "... even an overnight guest in a house has an expectancy of privacy that the Fourth Amendment protects." (Minnesota v Olson 49 5 US. 91).

Let me reiterate, yet again, that the sole, single, only, solitary function Brown was legally authorized to do was[to] look through the premises of my home for Justin Ott. He had no legal authority to do anything else. And I anticipated the walk through to be conducted in a reasonable, professional fashion, displaying courtesy and respect for the privacy of myself and others encountered in my house.

Case 2:19-cv-00181-CRW   Document 1   Filed 10/22/19   Page 7 of 18   PageID #: 7

to display the "... overriding respect for the sanctity of the home that has been embedded in our traditions since the origin of the Republic" (Harris v New York, see A-1 p 1 for citation).

Instead I was invaded by a terrorist with a badge and his underlings, who proceeded to run amuck inside my house, smashing and trampling underfoot items of enormous value — Constitutional safeguards. As opposed to asking Miss Kent for permission to enter her budoir in a civil manner, finding the door locked, Brown demands immediate entry into her bedroom. On what authority? NONE! When Sandra does not respond to the interlopers demands quickly enough to suit him, Brown badgers, harangues, harasses and intimidates her. On what authority did he persist in intruding on her legally protected expectation of privacy from the likes of him? ABSOLUTELY NONE! And when Sandra does answer the door, Brown immediately seizes her, without a warrant, probable cause, or any criminal activity to connect her with. On what authority? A RESOUNDING NONE!!! At no point during his raid, in his Affidavit of Complaint, or at any subsequent time does Brown ever articulate any reason for his arbitrary, capricious, and manifestly unlawful seizure of Sandra who is guilty of no unlawful behavior in the eyes of the law. We then are treated to the spectal of the lawbreaker Brown interrogating an innocent Sandra and demanding identification from her, as it was she, not him who is the criminal offender. As a result of his blatantly unconstitutional seizure of Sandra, Deputy Brown discovered the existence of what he called an active warrant for her arrest. It turned out to be a grand jury presentment issued only to Johnson County Law enforcement personnel on July 9, 2015 for a $40.00 offense. (copy attached). It had laid dormant ever since and most likely would have not seen the light of day forever except for Brown's illegal seizure of Sandra. Could it not, then, be the product of a manifestly illegal seizure, constitute the fruit of a very poisonous tree? Not in Johnson County it doesn't. Responding to what he obviously considered a splendid bit of police work on Brown's part, Assistant District Attorney

(over)

Leon Marshall sprung immediately into action against Sandra — against who?! And that action plus a parole violation warrant, has resulted in Sandra being confined, in lieu of bond, in the Johnson County oubliette from April 22, to the present time. Her next scheduled court appearence, appropriately enough, is for Halloween. As to the P.V. warrant, one wonders if the Grand Jury Presentment was so active, why the Board of Parole paroled Sandra directly into the free community and not to the detainer?

As for DA Marshall, if he saw nothing aberrant in Brown's in-house warrantless, sans probable cause, no crime to connect her with, arbitrary seizure of Sandra, we may speculate that he might consider the Gestapo to have been a much maligned agency of effective formal social control! And what about that sacrosanct basic principle of Fourth Amendment law that warrantless searches and seizures inside a home were presumptively un-reasonable? Tell that one to Thomas Brown, somebody please! And to Marshall.

"In terms that equally apply to seizures of property and seizures of persons, the Fourth Amendment has drawn a firm line at the threshold to the house. Absent exigent circumstances, that threshold may not be reasonably crossed without a warrant." (Peyton, supra at 84). However, Deputy Brown eschews warrants, and in retrospect I can see why. With their constraints and protections — see A-1 p 3 — they are inimical to Brown's style of policing, which is Exitus acta probat. What Justice Brandise characterized as that pernicious doctrine that the Government may commit crimes to secure convictions.

Having deceitfully finessed his way around the warrant requirement, once inside my house, warrant free, Brown behaved as if he was free to do anything he damn well pleased, to anyone whom he pleased, with immunity, because he wore a badge. And that pretty much sums up the situation in the Johnson County administration of criminal justice. Only a masochist would procure a warrant there, and the Fourth Amendment

with its guarantees, and the Fourteenth Amendment, lie in repose in the County — stone cold dead apparently. In his ends justify the means approach to policing Brown employs duplicity, perfidity, people's ignorance of their rights, sophistry, ersatz police power and discretion, and one situationally improvised pretext or another to put a gloss on his extra legal carryings-on.

So need more be said about Brown's eschewing of warrants, arbitrary seizures and searches without cause, or his unique, egosyntonic excuses that trigger his seizures and searches? The late Supreme Court justice Scalia would certainly have thought so. Speaking for the Court in Arizona v Hicks — citation A-1 p3 — he ruled that a dwelling place search, no less than a dwelling place seizure required probable cause. And that, "Dispensing with the need for a warrant is worlds apart from permitting a lesser standard of cause for the seizure than a warrant would require — i.e. the standard of probable cause." !!!

Therefore, given a reasonable assumption that Deputy Brown's methods of searching and seizing are representative of the County Sheriff's Department in general, it follows that:

1.) Procuring warrants is anathema. They constitute straightjackets, albatross, impediments to efficacious police work. We can readily see why they are inimical to Brown's style of policing:

"An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents. A warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly limited in its objectives and scope." (Skinner v Railway Labor Executives' Association. (Citation A-1 p3).

2) Warrantless searches and seizure are the only kind the Sheriff's Department does — its speciality, if you will. To reiterate, it is a basic principle of law that searches and seizures inside a home

are unreasonable. Violations of the Fourth + Fourteenth Amendments. This essential provision of American Law is to prevent government agents or agencies from deliberately circumventing the warrant requirement. Yet in-home warrantless searches and seizures remain an integral component of the Johnson County justice system.

3). As we have just seen, without a warrant the standard of probable cause, nevertheless, is required to initiate and carry out lawful seizures and searches. Was Miss Kent's seizure and search based on probable cause? Of course not. It was arbitrary, capricious, carried out in a fit of pique, for no ligitimate reason. Did anyone in the Johnson County "justice" system find this in the least bit offsetting, from top to bottom, apparently not!

4.) After seizing Sandra, Brown interrogated her. Why? Would any reasonable person, with no prior knowledge of this girl, once she had opened her bedroom door and Justin Ott was not found inside, conclude that she definately was involved in some criminal activity or other? But a person with a preconceived notion that she was guilty of something or other would. The Supreme Court in Dunaway v New York went to great lengths to establish that detention for custodial questioning, "... regardless of its label, intrudes so severely on Fourth Amendment protections as to require probable cause." (see A-1 p.3 for citation). Brown's seizure of Sandra to interrogate her for no articulated reason at all lacked probable cause.

5.) As for Brown's seizure of Sandra's drivers license, it

"... stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it." (Brown V Texas, citation At p. 3)

So was the seizure of Sandra and her drivers license without probable cause illegal, and the resultant discovery of the "active" detainement fruit of the poisonous tree? NO, not in Johnson County law. The seizures were not illegal! Although I must insist that D.A. Marshall will concede that Sandra did answer her door, his response must be that she failed to do so with the alacrity commanded by Deputy Brown. Therefore, in his plain view Sandra was guilty of the offense of Aggravated Delayed Door Opening, and he immediately seized her accordingly. I am sure D.A. Marshall can enlighten us as to the state statute or County Ordinance Aggravated Delayed Door Opening is in violation of. Surely there must be some provision for more response time for bedroom and, say, bathroom doors, than for doors in general.

With regard to the substitution of "lesser standards" for that of probable cause, lesser standards are the SINE QUA NON of The JOHNSON County Sheriff's Departments searches and seizures.

(6.) As k-9 deputy, Brown apparently is the Sheriff's Department go to guy when it comes to searches and siezures, and in this capacity he has developed a knack for extemporially on the spot justifications for seizing people which fall visibly short of probable cause standard. In his fictive, complete with manufactured dialog, — in his 4/22 complaint — account of his involvement with Donald wilson in the Delayed Door Opening caper, Brown deprives the reader of a chance to better appreciate his gift. The fact is that Donald wilson never was in Sandra's room on April 22. He arrived at my house while Brown

(over)

was yet engaged in his dog and poney show with Sandra Kent, and joined me in my living room. After a while Brown entered my living room, observed that Donald, whom he supposedly didn't know from Adam or his relationship with Sandra Kent, had dilated pupils, and based, one supposes, on his incomparable Training and experience, and with a certainty that would be the envy of any ophthalmologist, Brown instantly diagnosed Donald's condition to be the result of illegal drug usage, and he seized him accordingly. Donald was found to have some sort of drug pipe on him, the idiot! At no point did Brown in any way indicate Donald was free.

Shortly, one of Brown's minions entered the living room with Sandra in cuffs and some glassine envelopes. I looked at Brown in astonishment and he came fourth with what has to be the menhit in his rock garden of mendacities. He disingenously informed me that Sandra had given him permission to search her room!! Something she vehimently denies. One has to say the man has Chutzpah.

It didn't matter if Sandra, the cleaning lady, the plummer, or the TV repairman gave Brown permission to search a room in my house, without my consent the search was illegal.

(1). Brown and company had my authorization to enter my house for the sole purpose of doing a minimally intrusive visual walk through for Justin Ort. Nothing more!!! He had parlayed his perfidious entry into my home, without my permission, into a search and seizure fest, and then again without my consent, conducted a maximly intrusive general, top to bottom, non-specific, search and seizure in my residence.

(2). The fact of the matter was that having exceeded the constraints of the Ort authorization by changing its focus and scope, Brown was no longer authorized to be in my home. He was

Case 2:19-cv-00181-CRW   Document 1   Filed 10/22/19   Page 13 of 18   PageID #: 13

in a place where he was not authorized to be, much less doing any seizing and searching. In a word he was trespassing.

(3) Having arrogated control of my home, Brown then bestowed upon a guest in my house the authority to (a) void my delimiting provisions of the OTT in the house agreement, and (b) to grant him permission to go rummaging about in a room in my house, turning it topsy-turvy in a search for unspecified something, hopefully incriminating of some law breaking.

(4). In Minnesota v Olson (op cite), the U.S. Supreme Court held that: "That the guest has a host who has ultimate control over the house is not inconsistent with the guest having a legitimate expectation of privacy." Having completely demolished Sandra's Constitutionally protected expectation of privacy, Brown wanted me to believe that the Supreme Court erred in ruling that a host has ultimate control over his or her house. A guest does, says Brown.

I own my own house outright, I am not married, and I share no "common authority" with anyone !!!

(5) All of the incriminating evidence seized in my granddaughter's room while Sandra was a guest in my home, is fruit of the poisonous tree.

The High Court ruled in Wong Sun v United States (citation at p.3) that, "In order to make effective the fundamental Constitutional guarantees of sanctity of the home and inviolability of the person... this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search...." Deputy Brown is no respecter of the sanctity of the home or the inviolability of the person in his policing, but he did

Case 2:19-cv-00181-CRW Document 1 Filed 10/22/19 Page 14 of 18 PageID #:

(OVER)

raid on my residence in cuffs, Sandra Kent, and a fist full of ill-gotten gains to use against her. There is no doubting that the man gets results and the ends justify the means in the John-son County legal system, no matter how unconstitutional they may be.

Enter the piece de resistance, Public Defender STEVE MC EWEN. Right after Sandra was arrested I went to the Court House and was informed that for some reason or another, Sandra had an extended court date of July 29. I proceeded, at no little expense, to hire her a seasoned criminal lawyer, with some fourty years experience, and a proven track record in adversarial proceedings.

Primarialy because the County Jail has a self-serving policy that new admissions are not allowed visitors for the first 10 days of their confinement — see A-1-p    —Sandra and I ended up talking at cross purposes as to cases. Not for some time did I learn that even before I had hired her a lawyer, she had entered guilty pleas to the drug charges at her April 24, initial/probable cause court app-earance. I asked her why she had done such a hair brained thing and she informed me that her lawyer had told her to do so. He said that her's was an open and shut case, that she didn't have a leg to stand on. That I had given the deputies permission to "search the house", which they did, and found the incriminating evidence. So conviction was in-evitable, so why not just plead guilty? And so she did.

I find it incomprehensible that a graduate of what one assumes is an accredited law school, a barred attorney, and one full time employed in the criminal justice system, after reading Brown's complaint, did not know the difference between a walk through and a full fledged, top to bottom general search; or question why, if he had my permission to conduct such a search,

why was he asking Sandra's permission to search her room, was it a seperate entry? Or know that, "... warrantless serches are perse unreasonable ... full-scale searches ... are reasonable in Fourth Amendment terms only on a showing of probable cause to beleive that a crime has been committed and that evidence of the crime will be found in the place to be searched." (New Jersey v T.L.O. Citation A1 p.3). And since when have full scale searches become components of executing arrest warrants? Protective sweeps are no longer in fashion?

There is no denying that in a matter of mere minutes McEwen had:

1.) wrongfully advised his client to enter guilty pleas.

2.) Deprived her of her due process trial rights, including confronting and cross examining adverse witnesses, summoning favorable witnesses — ie: me — and entering motions to have the fruit of the poisoness tree, that is to say every bit of the states evidence, suppressed. and

3.) Provided Sandra with the "guiding hand of counsel" that benifited only the prosecution. And,

4.) Deprived her of the services of a competent experienced criminal trial attorney.

Johnson County Sheriff Edward Tester apparently is a admirer, promoter, and enthusiastic enabler of Brown's **effective**, efficient, and highly efficious policing techniques, and having ultimate oversight and control of Brown's job performance, he must assume his share of the responsibility for Brown's in home warrantless, sans probable cause, arbitrary searches and seizures, and violations of my infrangible rights, priviledges, and expectation of privacy within the confines of my own home — my castle.

The deputies who accompanied Brown on his fishhunt —

Case 2:19-cv-00181-CRW   Document 1   Filed 10/22/19   Page 16 of 18   PageID #: 16

(over)

that the raid also served as a training exercise, a serendiptuous opportunity for these fledging lawmen to observe Brown's policing techniques first hand. To study under the master. So the logical conclusion must be that its Sheriff Tester's intention to see that Brown's pernicious, duplicitous, unconstitutional methods are emulated, proliferated, and perpetuated in Johnson County. And prosecutor Marshall appears to be, for all intents and purposes, an adjunct deputy sheriff who sees, hears, and speaks no evil where his fellow officers are concerned.

5. A demand for judgment for the relief you seek (list what you want the Court to do):

a. To order Brown to pay me $250,000 in monitary compensation for his, inter alia, harm fisted invasion of the privacy of my home.

b. To order Tester to pay me $250,000 as the sanctioner and enabler of Brown's unconstitutional actions within the confines of my home.

c. To order McEwen to pay me compensation of $100,000 for his abject denial of my testifying as to the illegality of the searches + seizure and evidence seized inside my home.

d.

I (We) hereby certify under penalty of perjury that the above complaint is true to the best of my (our) information, knowledge and belief.

Signed this _____17th_____ day of _Octaber_____, 20 19 .

_John F. Reardon_

_____

_____

Signature of plaintiff (s)

3